No. 2324

Second Circuit Appeal

## SHUSHAN BROS. & CO., INC., v. W. B. INABNET, JR.

(May 9, 1925, Opinion and Decree.)
(June 27, 1925, Rehearing Refused)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Obligations—Par. 45.**
He who is notified that a contract has been made for him and subject to his ratification, by a person who pretended to have authority for that purpose, is presumed to ratify it, unless immediately on being informed thereof he repudiates it.

Appeal from the Fourth Judicial District Court of Louisiana, Parish of Ouachita. Hon. Percy Sandel, Judge.

This is a suit for the value of goods shipped by plaintiff to defendant. The defense is a general denial.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, attorneys for plaintiff, appellant.

Newton, Garett & Newton, of Monroe, attorneys for defendant, appellee.

CARVER, J.   Plaintiff sues defendant for $288.59 for goods alleged to have been shipped him on his order, and from an adverse judgment prosecutes this appeal.

The defense is a general denial.

The proof shows that Victor Marks a traveling salesman for plaintiff, went to defendant's store at Fairbanks, Louisiana, on December 10, 1923, while defendant was absent on account of sickness in his family, and obtained from defendant's brother, Ernest Inabnet, who was apparently in charge, what he considered an order for goods; that he mailed to defendant the

day afterwards a copy of the order showing Fairbanks as the shipping address; that no countermand was given; that part of the goods were shipped by rail to defendant at Fairbanks and the rest by parcel post to the same address; and that those shipped by parcel-post were afterwards returned to plaintiff who, though, refused to receive them. Those shipped to Fairbanks were put out on the platform there but defendant never took them away and the proof does not show that they were ever removed therefrom.

Defendant claims that his brother was without authority to order goods, except locally or from houses where he had an account already (plaintiff not being one of these) and his brother testified that:

"Fairbanks, La.,
"Mar. 4, 1924.
"Shushan Bros. Co. Inc.,
"New Orleans, La.,
"Dear Sirs:
"I am returning herewith some invoices. I do not intend taking this merchandise. I ordered these goods to be shipped to Monroe, La. and not to Fairbanks, La. These goods were thrown off at Fairbanks probably two weeks before ,I knew anything about them. No doubt they are damaged now. That is what you probably call a business way. I gave your Mr. Marks specific instructions not to ship same to Fairbanks. I was talking to Mr. Marks yesterday and he said his instructions were to ship to Monroe and all by Freight. This order was *stuffed* and I don't consider this justice.
"Very truly,
"W. B. Inabnet, Jr.
"E. V. I.

These letters were written, the first two by Claude Mullin a clerk in defendant's store, and the last one by his brother, Ernest.

Plaintiff having placed its claim in the hands of McHenry, Montgomery, Lamkin & Lamkin they wrote to defendant demanding payment whereupon he replied as follows:

"Fairbanks, La.
"Aug. 30, 1924.
"McHenry, Montgomery, Lamkin & Lamkin,
"Monroe, La.
"Gentlemen:
"I do not owe Shushan Bros. & Co., of New Orleans, La. anything. Because I have not bought anything of them. Neither have I received anything from them.
"Very Truly Yours,
"W. B. Inabnet."

Defendant admits writing this letter (page 3). He practically admits authorizing the letters written by Mullins and his brother. Asked about one of the letters, evidently one of those dated February 27th, he states (page 16) that he doesn't remember whether he authorized it or not, but he may have, and that it was his attitude at that time.

And later:

"Q. And you state you did not authorize him to write that letter?
"A. I don't know. I rather think I did, because he would not—
"Q. You did authorize him?
"A. I don't remember doing it. Pretty well tied up at that time with sickness and I don't remember."

As to another letter, probably the one of March 4th, he says: ·

"Q. State who wrote that letter?
"A. My brother.
"Q. Did you authorize him to write that letter?
"A. I told him to write to them. I didn't see the letter after it was written."

In this court · defendant's counsel argue that plaintiff is without right of recovery because:

1. The goods were shipped to the wrong place.

2. Because they were shipped too soon.

3. Because the order was given subject to defendant's ratification and was never ratified.

### I.

It is not claimed that defendant suffered any injury by the goods being shipped to Fairbanks. Defendant or his brother learned of their being there promptly. Marks says Ernest Inabnet told him they were at the depot, after which he saw them there between February 7th and February 10th. There is no pretence that the contents had been tampered with. The order, a copy of which was sent to defendant or to his brother on December 11th showed Fairbanks as the shipping address and this was where defendant's store was located.

### II.

It is not claimed, either, that shipping the goods too soon caused defendant any injury. The invoice was dated February 10th, payable sixty days thereafter.

### III.

The main defense is that Ernest Inabnet was without authority to give the order and that in fact he did give it expressly subject to ratification by his brother and that his brother not having ratified it there was in reality no order.

We may accept the testimony of Ernest Inabnet that the order was so given, but we think the conduct of the defendant amounted to a tacit ratification. He learned soon after the order was given that it had been given, his brother having told him of the duplicate order sent by Marks, but he did not countermand it, although this duplicate order showed that Marks considered it an unconditional order it not containing any notation to the effect that it was subject to confirmation. He learned that the goods were at the depot but did not return them or order them returned. Though away a good deal of the time, on account of his wife's sickness, he was in and out, of the store almost every day. Though knowing from the fact that plaintiff had shipped the goods that it regarded the order as valid, he did not indicate his disapproval even by writing to plaintiff until February 27th—twenty three days after the goods shipped by freight were put off and after the parcel-post goods came, and then instead of writing himself permitted his clerk and his brother to write the letters copied above, which letters contained no disavowal of his brother's authority but placed the rejection on the ground, as to the freight shipment that the goods should have been shipped to Monroe, and as to the parcel post shipment, that they should not have been shipped in February but in March.

As early as the year 1837 Chief Justice Martin, in the case of Pitts vs. Shubert, 11 La. 286, stated:

"No principle is better settled than that he who is notified that a contract has been made for him and subject to his ratification, by a person who pretended to have authority for that purpose, is presumed to ratify it, unless immediately on being informed thereof, he repudiates, it."

In Raymond vs. Palmer, 41 La. Ann. 425, the syllabus reads as follows:

"The silence of a principal after knowledge of an unauthorized or illegal act of his agent, is equivalent in law to an acquiescence in, and ratification of, the act or conduct of the agent.'

In Ball vs. Bender, 22 La. Ann. 496, the court, on rehearing page 496, uses the following language:

"It was the duty of Bender to have notified the plaintiff, Ball, that he repudiated the act of Ainsley, as unauthorized, so soon as he was informed of the fact even if Ainsley had not been authorized to sell, this he failed to do."

We think under these authorities defendant must be held to have ratified the order.

His counsel seek to escape the application of this principle by the argument that the order was not really an order because given only subject to confirmation and as

confirmation was never given it therefore never became an order. But in our opinion this argument is not sound because as shown by the authorities quoted above a ratification may be tacit as well as express.

In the Pitts case, supra, the testimony showed that Foster, who as agent of the plaintiff had sold the defendant some hogs, informed defendant that they belonged to plaintiff and that the validity of the sale was to depend on his ratification. In this respect the case is on all fours with the present case. The court, though, held that plaintiff had ratified the sale because when informed by defendant that he had purchased the hogs from Foster the plaintiff did not then disavow Foster's act.

Defendant's counsel cite Noble vs. Plons, 154 La. 429, 97 South. 599. We do not think this case in point. The express ground of the decision is that the party there pleading ratification by the principal of the unauthorized act of the agent failed to allege that the principal had knowledge of the material facts of the transaction. But here the proof satisfies us that defendant did have knowledge of the material facts of this transaction, which were that his brother had given the order and that plaintiff had filled it.

Defendant and his brother both testify that when informed of the order defendant said he did not want the goods; but this decision was not communicated to plaintiff which was allowed to remain under the belief that the order was a valid one, in reliance whereon it shipped the goods to the address given in the order a copy of which had been sent to defendant.

In the case of Ball vs. Bender, supra, the principal had expressed to his agent dissatisfaction with the contract in question, but the court held the principal bound because he failed to notify, Ball, the party with whom the contract was made.

The judgment of the lower court is therefore reversed and it is decreed that Shushan Bros. & Co., Inc., do have judgment against W. B. Inabnet, Jr., for the sum of two hundred and eighty-eight and 57-100 dollars with 5% per annum interest thereon from April 5, 1924, until paid, and the costs of both courts.